## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

VAMÉ KONÉ,

          *Plaintiff,*

    v.

STAPLES, INC.,

          *Defendant.*

Civil Action No. 24 -2420 (SLS)

Judge Sparkle L. Sooknanan

### MEMORANDUM OPINION

Vamé Koné, proceeding pro se, brought this lawsuit against Staples, Inc., his former employer, under 42 U.S.C. § 1981 and the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*., alleging that Staples discriminated against him because of his race and national origin. Staples has moved to dismiss Mr. Koné's Complaint under Federal Rule of Civil Procedure 12(b)(6) and to strike his demand for punitive damages. For the reasons discussed below, the Court grants the motion in part and denies it in part.

### BACKGROUND

#### A.    Factual Background

The Court draws the facts, accepted as true, from the Plaintiff's Complaint. *Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 619 (D.C. Cir. 2023). It also considers the Plaintiff's Opposition to the Defendant's Motion to Dismiss. *See Johnson v. District of Columbia*, 927 F.3d 539, 541 (D.C. Cir. 2019) (cleaned up) (noting that for pro se plaintiffs, courts must consider the complaint "in light of all filings, including filings responsive to a motion to dismiss").

Mr. Koné, who is Black, was employed by Staples for approximately six months—from February 2020 until his termination on August 18, 2020. *See* Compl. at 4, 5; Pl.'s Opp'n at 3, 6, ECF No. 12. According to Mr. Koné, his supervisor Edward Najjar subjected him to "[e]xcessive or more supervision . . . than [his] White/Caucasian colleagues." Compl. at 5. While Mr. Koné was required "to provide justifications and documentation for sick leave," *id.* at 5, his white colleagues were not required to do so, *see id.* at 6; Pl.'s Opp'n at 4. And even though Mr. Koné was "an excellent performer, certainly not the least performing Account Executive on the team compare[d] to other colleagues," Pl.'s Opp'n at 4, he was "put . . . on a PIP (Performance Improvement Plan) while . . . white/Caucasian colleagues with similar results/goals were not put on any such plan," Compl. at 6; *see* Pl.'s Opp'n at 4, 9, 11. His former "colleague Steven Osvatics[,] a White Caucasian, with a less than stellar track record for work results[,] wasn't reprimanded, nor fired for his lack of production like [him]." Pl.'s Opp'n at 11; *see id.* at 4–5.

Mr. Koné's supervisor also "racial[ly] harassed [him] . . . on a near daily basis," making comments about [Mr. Koné's] physical appearance." Pl.'s Opp'n at 3. For example, during "a Microsoft Teams Meeting around late April 2020," Mr. Najjar commented that Mr. Koné looked "dark and unfriendly . . . in his professional headshot picture." *Id.* at 3–4, 9.

At some point, Mr. Koné filed "a complaint with HR" alleging "Unlawful Discrimination, Employment Discrimination, Hostile, and Abusive work environment by [his] Supervisor Edward Najjar." Compl. at 5, 6. An investigation concluded that there was nothing "wrong with how . . . [Mr.] Najjar had been treating [Mr. Koné]." *Id.* Instead, Staples allegedly "took materially adverse actions against [Mr. Koné] because of his protected activity, including but not limited to issuing him unfounded discipline and firing [him]." Pl.'s Opp'n at 5; *see also* Compl. at 5.

Mr. Koné also alleges that Staples failed to pay him overtime wages. *See* Pl.'s Opp'n at 13. Although he "was expected to only work 32 hours instead of the regular 40 hours due to [him] being on furlough," thus "decreasing his salary," Staples asked him "to produce the same monthly quota." *Id*. He "was implicitly expected to work overtime with no compensation" and was "expected . . . to answer emails and phone calls during furlough time." *Id*. Staples also "acted willfully," Pl.'s Opp'n at 11, both in its failure to pay overtime, *id*. at 12, and in its "refus[al] to pay [Mr. Koné's] last commission check on orders totaling $223,427.00," Compl. at 7.

As a result of Staples' actions, which Mr. Koné attributes solely to his race and national origin, *see, e.g.*, Compl. at 6; Pl.'s Opp'n at 7, 10, he has "suffered emotional and financial" harm, Compl. at 9; *see also* Pl.'s Opp'n at 5, for which he demands actual, compensatory and punitive damages, *see* Compl. at 9–10.

### B.    Procedural Background

Mr. Koné filed this lawsuit on August 15, 2024, bringing claims under 42 U.S.C. § 1981 (Section 1981) and the Fair Labor Standards Act (FLSA). *See* Compl. On December 27, 2024, the Defendant moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) and to strike his demand for punitive damages. *See* Def.'s Mot., ECF No. 9. The motion is now fully briefed and ripe for review. *See* Pl.'s Opp'n; Def's Reply, ECF No. 13.

### LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests whether a complaint has properly stated a claim upon which relief may be granted." *Kursar v. Transp. Sec. Admin.*, 751 F. Supp. 2d 154, 163 (D.D.C. 2010). "In evaluating a motion under Rule 12(b)(6), the court must 'treat the complaint's factual allegations as true . . . and must grant [the] plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Donelson v. U.S. Bureau*

*of Prisons*, 82 F. Supp. 3d 367, 370 (D.D.C. 2015) (quoting *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (cleaned up)). But the court need not accept a plaintiff's "legal conclusions cast in the form of factual allegations." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (cleaned up). "[T]he court 'may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which . . . judicial notice' may be taken." *Donelson*, 82 F. Supp. 3d at 371 (quoting *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997)).

"The pro se nature of a complaint places a further gloss on the standard of review." *Shanks v. Int'l Union of Bricklayers & Allied Craftworkers*, 134 F.4th 585, 591 (D.C. Cir. 2025). A pro se plaintiff's submissions must "'be liberally construed' and 'held to less stringent standards than formal pleadings drafted by lawyers.'" *Bowman v. Iddon*, 848 F.3d 1034, 1039 (D.C. Cir. 2017) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (cleaned up)). And courts must consider the complaint "in light of all filings, including filings responsive to a motion to dismiss." *Johnson v. Dist. of Columbia*, 927 F.3d 539, 541 (D.C. Cir. 2019) (cleaned up). But a pro se plaintiff is not excused from complying with procedural rules and "must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" *Atherton v. District of Columbia Office of the Mayor*, 567 F.3d 672, 681–82 (D.C. Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Jones v. Horne*, 634 F.3d 588, 595 (D.C. Cir. 2011).

## DISCUSSION

### A.    Section 1981

Mr. Koné first alleges discrimination and retaliation based on national origin and race in violation of Section 1981. *See* Compl. at 4–5. Although the Court dismisses his claim based on

national origin discrimination, his race discrimination and retaliation claims survive dismissal at this early stage.

### a. Timeliness

At the threshold, Staples points to the four-year statute of limitations for Section 1981 claims and argues that the Plaintiff's claims are time-barred. *See* Def.'s Mot. at 6. More specifically, Staples argues that any claim "relating to excessive supervision, request(s) for medical documentation and [his] PIP should be dismissed with prejudice because they necessarily predated his termination in August 2020." *Id*. It is unclear whether Mr. Koné intends to rely on any events or conduct before August 15, 2020, four years before he filed his Complaint. He considers his termination "the main event that brought [him] in front of this court," Pl.'s Opp'n at 8, and August 18, 2020, as the date on which "the final adverse action occurred," *id*. at 6. To the extent he seeks to rely on any earlier events or conduct, Staples is correct that those cannot form the basis for his current claims.

### b. Discrimination

Section 1981 "protects the equal right of '[a]ll persons within the jurisdiction of the United States' to 'make and enforce contracts' without respect to race." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474–75 (2006) (quoting 42 U.S.C. § 1981(a)). "[C]ourts evaluating disparate treatment claims under section 1981 apply the same three-step *McDonnell Douglas* framework for establishing racial discrimination under Title VII" of the Civil Rights Act of 1964. *Doe #1 v. Am. Fed'n of Gov't Employees*, 554 F. Supp. 3d 75, 102 (D.D.C. 2021) (citations and internal quotation marks omitted); *see also Richardson v. Nat'l R.R. Passenger Corp*., No. 24-cv-2517, 2025 WL 1568198, at *7 (D.D.C. June 3, 2025). Thus, "a plaintiff without direct evidence of discrimination as it relates to contractual rights must first . . . establish[ ] that (1) he is a member

of a protected class, (2) he suffered an adverse employment action, and (3) the unfavorable action gives rise to an inference of discrimination." *Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 622 (D.C. Cir. 2023) (cleaned up); *see also Newman v. Howard Univ. Sch. of Law*, 715 F. Supp. 3d 86, 107 (D.D.C. 2024).

### i. National Origin

Staples argues that Section 1981 does not recognize a claim for national origin discrimination. *See* Def.'s Mot. at 5–6. Section 1981 is "intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics." *St. Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987). It "does not prohibit national origin discrimination per se." *Amiri v. Hilton Washington Hotel*, 360 F. Supp. 2d 38, 42 (D.D.C. 2003) (citing *Saint Francis College*, 481 U.S. at 613, *aff'd sub nom. Amiri v. Washington Hilton Hotel*, 173 F. App'x 1 (D.C. Cir. 2005)). Rather, "[n]ational origin discrimination is cognizable under § 1981 only if based on racial or ethnic characteristics associated with the national origin in question." *Wesley v. Howard Univ.*, 3 F. Supp. 2d 1, 3 (D.D.C. 1998). Here, the Plaintiff is Black, but he does not identify his country of origin, instead declaring himself "African." Compl. at 4, 5. Having failed to plead his national origin or facts regarding racial or ethnic characteristics associated with his national origin, Mr. Koné fails to state a plausible national origin discrimination claim under Section 1981. *See, e.g.*, *Amiri*, 173 F. App'x at 42 (dismissing § 1981 claim where the plaintiff based his national origin discrimination claim "on the fact [that] he is from Afghanistan"); *Kidane v. Northwest Airlines, Inc.*, 41 F. Supp. 2d 12, 17 (D.D.C.1999) (finding no cognizable § 1981 claim where the plaintiff alleged national origin discrimination because he was from Ethiopia).

### ii. Race

Turning to Mr. Koné's race discrimination claim, Staples does not appear to contest the first two requirements of the *McDonnell Douglas* framework. With good reason. First, Mr. Koné, who is Black, Compl. at 7, is part of a protected class. And second, his termination is a quintessential adverse employment action. *See Douglas v. Donovan*, 559 F.3d 549, 554 (D.C. Cir. 2009). But Staples contests causation, arguing that the Plaintiff's allegations are too conclusory. Although it is a close call, the Court finds that Mr. Koné's allegations give rise to an inference of discrimination at this stage.

A plaintiff may demonstrate a connection between his race and an adverse employment action by "alleg[ing] facts showing that [he] was treated less favorably than another similarly situated person of a different race." *Wilson v. DNC Servs. Corp.*, 315 F. Supp. 3d 392, 400 (D.D.C. 2018) (citing *Brown v. Sessoms*, 774 F.3d 1016, 1023 (D.C. Cir. 2014)). "[S]imilarly situated" means that the co-worker "possesses all the relevant characteristics the plaintiff possesses except for the characteristic about which the plaintiff alleges discrimination." *De La Fuente v. DNC Servs. Corp.*, No. 18-cv-336, 2019 WL 1778948, at *7 (D.D.C. Apr. 23, 2019) (cleaned up). While the burden on a plaintiff "at the pleading stage is not onerous," *Redmon v. YMCA of Metro. Wash.*, 417 F. Supp. 3d 99, 102 (D.D.C. 2019) (cleaned up), he "cannot merely invoke his race in the course of a claims narrative and automatically be entitled to pursue relief," *Bray v. RHT, Inc.*, 748 F. Supp. 3, 5 (D.D.C. 1990) (cleaned up). "Rather, [a] plaintiff must allege some facts that demonstrate that his race was the reason for [the] defendant's actions." *Id*. (cleaned up).

Mr. Koné alleges that he "was treated differently than his other White/Caucasian counterparts" and "wouldn't have suffered the loss of a legally protected right if it weren't for race." Compl. at 7. Had his allegations ended there, his claim would fail. But Mr. Koné does more.

He identifies a white colleague who "didn't receive the same treatment as [him] despite [his] . . . better performance results." Pl.'s Opp'n at 9; *see also id.* at 5. And though not the model of clarity, his Complaint alleges that he and his colleague reported to the same supervisor, *see* Compl. at 5; that they were had "similar sales results/goals," Compl. at 6; and that notwithstanding Mr. Koné's superior performance, he was fired, and the white colleague was not, *see* Pl.'s Opp'n at 4–5, 9. Accepting these allegations as true, as the Court must, these allegations survive dismissal. *See, e.g.*, *Wright*, 68 F.4th at 622 (denying motion to dismiss where the plaintiff alleged that the defendant did not defame a white predecessor or other non-African-American employee); *Moini v. LeBlanc*, 456 F. Supp. 3d 34, 48 (D.D.C. 2020) (denying motion to dismiss a Section 1981 claim where the plaintiff alleged that the defendant treated those of "Caucasian,' 'white,' and 'of European descent'" more favorably); *Montgomery v. Omnisec Int'l Sec. Servs.*, Inc., 961 F. Supp. 2d 178, 183 (D.D.C. 2013) (liberally construing a pro se plaintiff's complaint alleging "in one sentence that she was discriminated against, and in the next sentence, that she was terminated" as "lead[ing] to the undeniable conclusion that plaintiff believes the two facts were causally linked").[1]

### c. Retaliation

Section 1981 prohibits retaliation for opposing racial discrimination, providing that all persons shall have the same right "to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981; *see Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 69–70 (D.C. Cir. 2015). Here, too, the Title VII standard applies to Section 1981 retaliation claims. *See Harris*, 791 F.3d at 68–69 (applying the same standard to retaliation claims under 42 U.S.C.

---

[1] Staples argues that Mr. Koné may not rely on facts alleged for the first time in opposing its motion. *See* Def.'s Reply at 5–6. Not so. Because the Plaintiff is proceeding pro se, the Court is obliged to consider all of his filings. *See Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015).

§ 1981). To state a prima facie case of retaliation, a plaintiff must show that "(1) he engaged in statutorily protected activity, (2) the employer took an adverse employment action against him, and (3) a causal connection existed between the two." *Gibson*, 2025 WL 958241, at *4 (collecting cases). At the motion to dismiss stage, "[t]he issue is not whether the plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002); *see also Rochon v. Gonzales*, 438 F.3d 1211, 1220 (D.C. Cir. 2006) ("[I]n order to survive a motion to dismiss, all [the] complaint has to say is [that] 'the [defendant] retaliated against me because I engaged in protected activity.'" (cleaned up)). Mr. Koné's allegations survive this liberal pleading standard.

As with Koné's discrimination claim, Staples does not appear to take issue with the first two requirements. First, Mr. Kone engaged in statutorily protected activity when he filed "a complaint with HR" alleging "Unlawful Discrimination, Employment Discrimination, Hostile, and Abusive work environment by [his] Supervisor Edward Najjar." Compl. at 6, 5. Second, his termination "plainly represents materially adverse employment action." *Rogers v. Voltron Data, Inc.*, No. 24-cv-84, 2024 WL 4647644, at *8 (D.D.C. Oct. 31, 2024). But Staples argues that "the Complaint contains no specific allegations that can establish any causal link between Plaintiff's protected activity (complaining to HR) and the adverse employment action (termination)." Def.'s Mot. at 7. Although a close call, Mr. Koné nudges his claim to the side of plausibility.

"[T]raditional principles of but-for causation" apply to Title VII retaliation claims, *Segal v. Harris Teeter Supermarkets, Inc.*, No. 15-cv-1496, 2016 WL 7223273, at *8 (D.D.C. Dec. 13, 2016), meaning that the plaintiff must show "that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer," *id.* (quoting *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360(2013)). To meet this

requirement, "a plaintiff may submit direct evidence of retaliation" or "may allege facts supporting an inference of retaliation[.]" *Blackmon-Malloy v. United States Capitol Police Board*, No. 01-cv-2221, 2024 WL 4298853, at *11 (D.D.C. Sept. 26, 2024) (cleaned up). While temporal proximity between the protected activity and the adverse action is sufficient to establish causation, the two events must be "very close" in time. *See Bergbauer v. Mabus*, 934 F. Supp. 2d 55, 83 (D.D.C. 2013) (quoting *Hamilton v. Geithner*, 666 F.3d 1344, 1357–58 (D.C. Cir. 2012)).

Mr. Koné alleges that Staples "took materially adverse actions against [him] because of his protected activity, including but not limited to issuing him unfounded discipline and firing [him]." Pl.'s Opp'n at 5; *see* Compl. at 5. "If it wasn't for [his] . . . protected activity," he alleges, "in retaliation he wouldn't have been fired." Pl.'s Opp'n at 5. Although Mr. Koné does not reveal the date he complained to Human Resources, he alleges that he "was *immediately* fired after filing a complaint and asking for remedy with Defendant's HR managers." *Id.* at 9 (emphasis added). This is enough to plead causation at the motion to dismiss stage, particularly for a pro se plaintiff. *See Dave v. Lanier*, 606 F. Supp. 2d 45, 52 (D.D.C. 2009) ("[D]rawing all reasonable inferences in the plaintiff's favor, the complaint suggests that these adverse acts began soon after he returned from sick leave" even though "the plaintiff does not specify the exact interval between the protected activity and the allegedly retaliatory acts[.]"); *Brown v. Snow*, 407 F. Supp. 2d 61, 66 (D.D.C. 2005) ("To demonstrate causation in the absence of direct evidence, . . . the plaintiff must show that the employer knew of the protected activity and that the adverse action occurred soon thereafter."); *see also Swierkiewicz*, 534 U.S. at 511–14 (holding that the plaintiff need not plead all elements of his prima facie case in the complaint).

### B.    FLSA

Under the FLSA, an employer must pay its "employees time-and-one-half for hours worked beyond forty per week unless the employees are exempt." *Smith v. Gov't Emps. Ins. Co.*, 590 F.3d 886, 888 (D.C. Cir. 2010). "In order to state a claim under the FLSA for unpaid overtime, a plaintiff must allege that: (1) the defendant employed him; (2) the defendant is an enterprise engaged in interstate commerce covered by the FLSA or the plaintiff is otherwise covered by the FLSA; (3) the plaintiff actually worked in excess of a 40–hour work week; and (4) the defendant failed to pay him overtime wages as required by law." *Driscoll v. George Washington Univ.*, 42 F. Supp. 3d 52, 58 (D.D.C. 2012) (citations omitted). Ordinarily an FLSA claim must be brought within two years, and if the cause of action "aris[es] out of a willful violation, [an action] may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). Given this "two-tiered statute of limitations, . . . Congress intended to draw a significant distinction between ordinary violations and willful violations." *McLaughlin v. Richland Shoe Co*., 486 U.S. 128, 132 (1988). Willful conduct "is generally understood to refer to conduct that is not merely negligent," such that an employer acts willfully if it "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Id*. With these standards in mind, Mr. Koné does not adequately plead an FLSA claim.

Staples does not appear to contest the first two requirements: It employed Mr. Koné, and it is an enterprise engaged in interstate commerce covered by the FLSA. Turning to the third, Mr. Koné's allegations are far from clear. He claims that during the COVID-19 pandemic, Staples implemented a "Partial Furlough" effective April 5, 2020, and reduced its employees' pay by 20 percent for an indefinite period. *See* Pl.'s Opp'n, Ex. 3 at 2, ECF No. 12-3. During this time, he "was implicitly expected to work overtime with no compensation." Pl.'s Opp'n at 13. And although

he worked 32 hours per week, Staples "asked [him] to produce the same monthly quota" by "answer[ing] emails and phone calls during furlough time," for example. *Id*. Notably missing is any allegation that Mr. Koné ever worked more than 40 hours per week. *See id.* In fact, accepting Mr. Koné's allegations as true, a 40-hour workweek was not an option during the relevant time period because of partial furloughs.

As to the fourth requirement, Mr. Koné's allegations are murkier still. He claims to have earned commission "on orders totaling $223,427,00," Compl. at 7, for products sold in June and August 2020, *see generally* Pl.'s Opp'n, Ex. 1, ECF No. 12-1, which Staples "refused to pay," Compl. at 7. Standing alone, a bald demand for commission falls short of a plausible legal claim under the FLSA. *See Coffen v. Washington Convention & Sports Authority*, 271 F. Supp. 3d 211, 214 (D.D.C. 2017) ("[T]he statutory language [of the FLSA] simply does not contemplate a claim for wages other than minimum or overtime wages." (citation omitted)). And Mr. Koné does not identify another statute under which his claim arises or the terms of a written agreement from which his entitlement to commission is derived. *See generally* Compl.; Pl.'s Opp'n.

Even if Mr. Koné had adequately pleaded claims under the FLSA, Staples argues that the claims are time-barred. *See* Def.'s Mot. at 9. The Court agrees. Mr. Koné brought this lawsuit almost four years after his termination, and an FLSA claim must be brought within two years or three if it is based on a willful violation of the statute. 29 U.S.C. § 255(a).

Mr. Koné's response is unavailing. He explains that "according to [Staples'] own rules, commission payment is expected 1 month after delivery [of the products] to the customer." Pl.'s Opp'n at 12. And during the pandemic, due to "the shortage of computer parts in general and computer chips in particular," delivery "took between 12 and 15 months for delivery to customers." *Id*. Because his "order[s] were not delivered to customers until September for some and October

2021 for others," *id*., Mr. Koné argues that his FLSA claim would not have accrued until October 2021, *id*. at 13. Even accepting this as true, his FLSA claim would be time-barred under the two-year limitations period. And Mr. Koné has not done enough to trigger the FLSA's three-year statute of limitations for willful conduct. He refers to an unidentified "previous violation of FLSA" and alleges that Staples' "actions to not respect to pay Plaintiff's commissions and failure to pay overtime wages constitute willful actions." *Id.* at 12. But these assertions are vague and conclusory. Mr. Koné fails to allege facts supporting an inference that Staples "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]," *McLaughlin*, 486 U.S. at 133, with respect to amounts he claims he is owed.

### C.    Punitive Damages

Finally, Staples asks the Court to strike the demand for punitive damages. *See* Def.'s Mot. at 9–10. The Court agrees that punitive damages are unavailable for Mr. Koné's FLSA claim. But it sees no reason to strike them for his Section 1981 claim.

Starting with the FLSA, courts have generally held that it does not allow for punitive damages. *See, e.g.*, *O'Connor v. Soul Surgery LLC*, No. CV-22-00156-PHX-JJT, 2024 WL 4817660, at *20 (D. Ariz. Nov. 15, 2024) (noting that punitive damages "are not available under the FLSA for an employer's failure to pay minimum wage or overtime"); *Bolick v. Brevard Cty. Sheriff's Dept.*, 937 F. Supp. 1560 (M.D. Fla. 1996) (same); *Keene v. Rinaldi*, 127 F. Supp. 2d 770, 772 (M.D.N.C. 2000) (collecting cases). But even assuming otherwise, "[p]unitive damages may be awarded only . . . [where] the defendant[']s conduct was willful and outrageous, reckless or aggravated by evil motive, actual malice or deliberate violence or oppression." *Reeves v. Carrollsburg Condominium Unit Owners Ass'n*, No. 19-cv-2495, 1997 WL 1877201, at *9 (D.D.C. Dec. 18, 1997) (cleaned up). And Mr. Koné's FLSA allegations fall well short of this standard. He

alleges that "Staples . . . has shown repeated violation in the past of the FLSA in several courts within the U.S.[,] most recently in a New Jersey court." Pl.'s Opp'n at 13. And he claims that Staples' refusal to "rectify this harm" amounted to "recklessness, malice and deceit," thus justifying an award of punitive damages. *Id.* But these allegations are too conclusory. They do not explain the relevance of unidentified cases in other courts or state exactly what Staples did (or did not do). Thus, even if an FLSA claim survived, punitive damages are unwarranted.

But punitive damages are recoverable in Section 1981 cases. And here, Mr. Koné has done enough. Again, punitive damages are available where there is "conduct exhibiting malice, evil motive, recklessness or callous indifference to a federally protected right." *Berger v. Iron Workers*, No. 75-1743, 1994 WL 151292, at *37 (D.D.C. Apr. 14, 1994), *rev'd in part on other grounds*, 1170 F.3d 1111 (D.C. Cir. 1999). And "[a]n employee's right to employment free from racial discrimination is one of the most widely recognized and protected civil rights." *Barbour v. Merrill*, 48 F.3d 1270, 1278 (D.C. Cir. 1995). As "the Supreme Court has explained, evidence that suffices to establish an intentional violation of protected civil rights also may suffice to permit the jury to award punitive damages[.]" *Id.* At this stage of the proceedings, Mr. Koné's request for punitive damages thus survives along with his discrimination claim. *See, e.g.*, *Thompson v. International Ass'n of Machinists and Aerospace Workers*, 580 F. Supp. 662, 670 (D.D.C. 1984) (denying a partial motion to dismiss where the "plaintiff's allegations of intentional discrimination by defendants [we]re sufficiently adequate to support her claim for punitive damages").

## CONCLUSION

For these reasons, the Court grants in part and denies in part the Defendant's Motion to Dismiss, ECF No. 9. The Court grants the motion as to any aspects of Mr. Koné's Section 1981 discrimination claims premised on national origin discrimination or arising before August 15,

2020, as well as his FLSA claim. And it strikes his demand for punitive damages for his FLSA claim. But the Court denies the motion as to Mr. Koné's Section 1981 race discrimination claim based on his termination and his Section 1981 retaliation claim. And it declines to strike his demand for punitive damages for his Section 1981 claims.

       A separate order will issue.


                                        _____

                                        SPARKLE L. SOOKNANAN
                                        United States District Judge

Date:   July 25, 2025